UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES ROBERT GILLIS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>AETNA DISABILITY SERVICES,<br><br>　　　　Defendant. | No. 15-CV-11006-PBS |

**REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 34)**

CABELL, U.S.M.J.

　　*Pro se* plaintiff Charles R. Gillis was employed as a clerk in the patient finance department of Boston Children's Hospital, a sedentary position. In 2011 he had knee surgery. His doctor reported that he was recovering nicely two weeks after the surgery, but within three months determined that he was disabled. The defendant, Aetna Disability Services ("Aetna" or "the defendant"), initially approved the plaintiff's application for short-term disability benefits but later terminated those benefits, and thereafter denied the plaintiff's application for long-term disability benefits. No one disputes that the plaintiff suffers from an impairment but Aetna concluded that he was not disabled under its plan because he was able to perform sedentary work. The plaintiff alleges that Aetna wrongfully terminated his short-term disability benefits and denied his request for long-term disability benefits in violation of ERISA, 29 U.S.C. §§ 1001-1461. (Dkt. No. 1). Aetna has in turn moved for summary judgment. As discussed below, there is no basis to find that the defendant abused its discretion in denying the plaintiff's

disability claim. I recommend therefore that the defendant's motion for summary judgment be granted.

**I.    BACKGROUND**

The plaintiff participated in an employer-sponsored disability benefits plan underwritten by the defendant ("the Plan"). The Plan provides both short and long term disability benefits. The "test of disability" set forth in the plaintiff's policy is the same for both short and long-term benefits, except that long-term benefits are not available until the insured has been disabled for a set period of time, referred to as an elimination period. (Administrative Record "A.R.," Dkt. No. 34, pp. 4-5, 438). The Plan provides that an insured is disabled if he is "not able to perform the *material duties* of [his] *own occupation* solely because of disease or *injury* . . . ." (A.R. p. 4, 438) (emphasis in original). The Plan confers discretionary authority on the defendant to determine whether plan participants meet this definition of disability. (A.R. p. 56).

**A.    History of the Plaintiff's Disability Claim**

***1.    Knee Issues and Treatment by Dr. Donald Reilly***

On June 30, 2011, the plaintiff had surgery on his right knee. On July 15, 2011, the plaintiff had an initial follow-up visit with his physician, Dr. Donald Reilly. Dr. Reilly noted that the plaintiff stated that he was "doing well" and that "his knee is better." The plaintiff was able during a physical exam to fully extend his right knee, and had no instability in his left knee. (A.R. pp. 715-16). Less than three months later, however, on September 9, 2011, Dr. Reilly completed insurance paperwork and indicated that the plaintiff was "permanently disabled." (A.R. p. 726). Approximately one month later, though, on October 7, 2011, Dr. Reilly saw the plaintiff again but his notes made no mention of a disability. He wrote that the plaintiff "had catching in patellofemoral joint which now he states is rare," and had also recently noticed

another "catch in the knee" that was "different than the patellofemoral catch he had before." (A.R. p. 717).

On December 7, 2011 and May 7, 2014, Dr. Reilly submitted letters to Aetna stating that the plaintiff has a "30% whole person impairment" and "75% right lower extremity impairment." (A.R. pp. 450, 737, 762).  On May 6, 2014, Dr. Reilly completed an Aetna "Attending Physician Statement" which stated that the plaintiff has "osteoarthritis" with "mechanical complication," and is "permanently disabled."  (A.R. p. 770).

### 2. *Pontine Stroke, Chronic Pain and Treatment by Dr. James Otis*

Independent of his knee issues, the plaintiff has a history of pontine stroke, which can cause a loss of sensation and facial paralysis.  Dr. James Otis treated him for this issue and his treatment notes begin in September 2011, when the plaintiff saw him for "chronic joint pain." Dr. Otis renewed the plaintiff's pain medication prescription and indicated he would see him again in two months. (A.R. p. 728).  On or about what appears to be December 27, 2011, which for perspective was during the time period when the plaintiff was challenging Aetna's decision to terminate his short term disability benefits, Dr. Otis wrote a letter "To whom it may concern" stating that the plaintiff cannot sit for more than ten minutes at a time, and is "somewhat sedated as a result of his pain medication," making concentration difficult. (A.R. p. 740).

The plaintiff visited Dr. Otis regularly throughout 2013 and 2014.  Dr. Otis's treatment notes state that the pontine stroke left "no clear residual deficit," and that the plaintiff was alert, oriented and able to speak fluently.  Dr. Otis diagnosed chronic joint pain and continued to renew the plaintiff's prescription for pain medication.  (A.R. pp. 775-790).  On May 19, 2014, Dr. Otis completed an Aetna claims form and stated that the plaintiff was capable of full-time sedentary work.  (A.R. p. 754).

### *3. The Plaintiff's Disability Application and Independent Medical Reviews*

In July 2011 the plaintiff applied for and was granted short-term disability benefits through the Plan. Aetna terminated those benefits effective October 30, 2011, however, following an independent medical review the defendant commissioned to determine the plaintiff's continued eligibility for short-term disability benefits. (A.R. pp. 731-736). The independent medical reviewer, orthopedic surgeon Dr. Martin Mendelssohn, noted in his review that the plaintiff had some catching in his left knee and some issues with pain in his right knee, but found nothing to substantiate the plaintiff's claim of total disability. (A.R. pp. 731-734, 831-834). Because the medical evidence as determined by an independent medical reviewer showed that the plaintiff was able to perform his own occupation, Aetna concluded that the plaintiff did not meet the Plan's definition of disability, and therefore was not eligible for disability benefits. (A.R. pp. 4, 438).

On November 8, 2011, the plaintiff appealed the termination of his short term disability benefits. Aetna in turn commissioned a second independent medical review, which was completed on December 29, 2011. The reviewing orthopedic surgeon, Dr. James Wallquist, found that there was no medical evidence to support a claim of total disability. (A.R. pp. 825-828). Both Dr. Wallquist and Susan Dorman, an Aetna representative, tried to contact the plaintiff's treating physician, Dr. Reilly, by phone and by fax, but he apparently did not respond. (A.R. pp. 456-58, 461). On March 12, 2012, Aetna denied the plaintiff's appeal. (A.R. p. 462).

In December 2011 the plaintiff filed a second appeal[1]. (A.R. 738). Separately, and around the same time, the Social Security Administration approved the plaintiff's application for

---

[1] The plaintiff's appeal request states that the plaintiff is seeking "permanent disability," so it may be that the plaintiff thought he was requesting long-term benefits. Nonetheless, the defendant's brief states that the plaintiff's appeal was treated as related to the termination of his short-term benefits. This distinction does not impact the

4

disability benefits. (A.R. 764). In response to the plaintiff's appeal, Aetna agreed to commission another independent medical review, this time of the plaintiff's neurological symptoms. On January 5, 2012, the reviewing neurologist, Dr. Vaughn Cohan, found that there was not sufficient evidence to support a claim of total disability based upon the plaintiff's history of pontine stroke. Dr. Cohan noted that orthopedic issues were outside his area of expertise and referred Aetna to the report of Dr. Mendelssohn. (A.R. pp. 818-821). The defendant sent a copy of Dr. Cohan's report to the plaintiff's treating physicians and again requested comments. None of them responded, however. (A.R. pp. 455, 458).

On December 20, 2012, and while the plaintiff's appeal regarding short-term disability benefits was pending, the plaintiff requested that the defendant consider his eligibility for long term disability benefits. The defendant did so, but later denied his request, on June 9, 2014. (A.R. pp. 628-630, 646-49). The plaintiff appealed the denial on December 15, 2014. (A.R. p. 671). On January 14, 2015, Aetna commissioned another independent medical review. The reviewing physician, Dr. Daniel Benson, opined that Dr. Reilly's prior conclusion that the plaintiff was disabled was "excessive," and found that there was no evidence of complete disability. (A.R. pp. 700-703). On March 5, 2015, the defendant denied the plaintiff's appeal. (A.R. pp. 684-86).

### B. Aetna's Motion for Summary Judgment

The defendant argues that its decisions to both terminate the plaintiff's STD benefits and deny his application for LTD benefits were reasonable and therefore must be affirmed. The defendant concedes that the plaintiff was covered by long-term disability insurance, and followed the proper procedures to file a claim. Aetna argues that the dispositive issue though is

---

analysis because the key concern in either case remained whether the plaintiff was able to perform the material duties of his sedentary position at Boston Children's Hospital.

whether the plaintiff's impairments rendered him disabled under the Plan.  The defendant argues that it reasonably found that the plaintiff could perform the essential functions of his job as a finance clerk, which is a sedentary occupation, and therefore was not disabled.

The plaintiff argues that he was disabled under the plan due to the combination of his pain and the mental limitations caused by his prescribed pain medication.  He argues that Aetna abused its discretion when it decided to the contrary.  He argues further that the defendant created an application process that was difficult to navigate and was rigged against claimants.  He specifically contends that Aetna:  1) failed to take into account the SSA's decision to approve the plaintiff for social security benefits; 2) failed to give appropriate weight to the opinion of his treating physician, Dr. Reilly; 3) failed to conduct a peer-to-peer review with Dr. Reilly (who refused to speak to any of the independent medical reviewers by phone); and 4) improperly relied on an independent review of the plaintiff's medical records rather than conducting an actual physical exam.  (Dkt. No. 39).

## II. ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment as to any claim, or part of a claim.  FED. R. CIV. P. 56(a).  The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Johnson v. Gordon*, 409 F.3d 12, 16–17 (1st Cir. 2005) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

In ERISA cases, the district court acts in an appellate role. Review is generally "based only on the administrative record before the plan administrator[2]" and "summary judgment is simply a vehicle for deciding" whether the plan's determination that the plaintiff did not meet his burden of establishing disability was reasonable. *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (2005). As a result of this difference in the Court's role, the familiar Rule 56 standard also differs "in one important aspect:" "the non-moving party is not entitled to the usual inferences in its favor." *Id*.

Instead, in a case like this one where the plan administrator has discretionary authority to make disability determinations and there is no allegation of a conflict of interest, the plan administrator's decision is reviewed "only for an abuse of discretion." *Pari-Fasano v. ITT Hartford Life and Acc. Ins. Co.*, 230 F.3d 415, 419 (1st Cir. 2000) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). In the First Circuit, courts focus on the reasonableness of the plan administrator's decision. *Colby v. Union Sec. Ins. Co. & Mgmt. Co.,* 705 F.3d 58, 62 (1st Cir. 2013). The plan administrator's decision should be upheld "if the decision was reasoned and supported by substantial evidence, meaning that the evidence is 'reasonably sufficient to support a conclusion and contrary evidence does not make the decision unreasonable.'" *Morales-Alejandro v. Medical Card Sys.*, 486 F.3d 693, 698 (1st Cir. 2007) (quoting *Madera v. Marsh USA, Inc.*, 426 F.3d 56, 64 (1st Cir. 2005)). This decision should be made after taking into account all of the relevant, reliable evidence in the administrative record, including the opinions of the plaintiff's physician, the independent medical evaluations, and the

---

[2] Generally, there is no discovery in ERISA cases and neither party can introduce evidence beyond that contained in the administrative record. *Orndorf*, 404 F.3d at 512, 517. Given the nature of the Court's review, trial is generally not required and most cases are decided on summary judgment. *Id*. at 512 (stating that the plaintiff "was not entitled to trial" where sole dispute was whether the plaintiff should have been granted benefits based upon evidence in the record).

7

Social Security Administration's determination regarding disability. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 297 (6th Cir. 2004) and First Circuit cases cited *infra*.

### B. Aetna Did Not Abuse Its Discretion When It Denied the Plaintiff Long Term Disability Coverage

#### *1. Aetna was not Obligated to Decide Similarly to the SSA*

The plaintiff argues that Aetna erred when it ostensibly ignored the SSA's determination that he was disabled and eligible for disability benefits and denied his LTD benefits application. He argues based on Sixth Circuit law that Aetna was bound to follow the SSA's lead and thus grant his application.[3] It is settled law in this Circuit, however, that SSA determinations are not binding on ERISA plan administrators and there is no rule requiring that SSA determinations be given controlling weight (or any particular amount of weight) in ERISA plan eligibility decisions. *Morales-Alejandro*, 486 F.3d at 699 (stating that "benefits eligibility determinations by the Social Security Administration are not binding on disability insurers"); *accord Calvert v. Firstar Finance, Inc.,* 409 F.3d 286, 294 (6th Cir. 2005). To be clear, though, a plan administrator may not completely disregard the SSA's decision; it is part of the overall record to be considered when rendering a disability determination. *Morales-Alejandro*, 486 F.3d at 699 n.6.

Here, the record shows that the SSA determination was provided to the independent medical reviewer when the determination became available. In particular, Dr. Daniel Benson had the pertinent SSA records at the time he conducted his medical review and noted that he

---

[3] Relying on *Raybourne v. Cigna Life Ins. Co. of New York*, 700 F.3d 1076 (7th Cir. 2012) and *Glenn v. MetLife*, 461 F.3d 660 (6th Cir. 2006), the plaintiff also argues that carriers are estopped from arguing that a claimant is not disabled in cases where the carrier received a financial benefit from the claimant's successful SSA application. This reasoning is inapplicable here because the defendant did not receive any benefit from the plaintiff's SSA application. To the extent that the plaintiff is arguing that *Raybourne* and *Glenn* alter the general rule that SSA determinations are not binding on ERISA plan administrators, the Court does not agree.

8

reviewed those documents along with other relevant records relating to the plaintiff.  (A.R. pp. 701-703).  Because the record shows that the defendant did indeed take the SSA's determination into consideration, the Court cannot conclude that Aetna abused its discretion when it reached the contrary conclusion that the defendant was not disabled and was able to perform sedentary work.  To be sure, it would have been preferable for the medical reviewer to explicitly explain why he disagreed with the SSA, but that is not a reason to set aside the defendant's determination.  *Morales-Alejandro*, 486 F.3d at 699, 701 (finding that plan administrator did not abuse its discretion when it failed to give controlling weight to SSA's disability determination and affirming district court decision granting judgment on the record in favor of plan administrator)

### 2. *Aetna was not Obligated to Give Controlling Weight to Dr. Reilly's Opinion*

The plaintiff argues that the defendant failed to give sufficient weight to his treating physician Dr. Reilly's opinion that he was disabled.  Under ERISA, a claimant is entitled to a "full and fair" assessment of his claim, and "specific reason[s]" if his benefits are terminated, but there is no requirement that any particular weight be given to a particular physician's opinion, even a treating physician.  29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1 (2002); *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003) (explicitly rejecting the use in ERISA cases of a "treating physician" rule similar to that employed in Social Security cases).  On the contrary, the Supreme Court has instructed that courts may not "require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  *Black & Decker Disability Plan*, 538 U.S. at 834.

9

Of course, this is not to say that a plan administrator may arbitrarily ignore the opinion of a treating physician such as Dr. Reilly. *Id*. The defendant was required in reaching a reasoned decision to take Dr. Reilly's opinion into account along with all of the other evidence supporting the plaintiff's disability claim. *Morales-Alejandro*, 486 F.3d at 698. Ostensibly, that is what the defendant appears to have done here. The record reflects that Aetna considered both Dr. Reilly's and Dr. Otis's opinions. Indeed, Aetna conceded that the plaintiff suffered from knee pain and had a history of pontine strokes. However, based on the whole of the evidence, including Dr. Otis's opinion as well as that of the three independent medical reviewers, the defendants had a reasonable basis to conclude that Dr. Reilly's opinion --that these impairments rendered the plaintiff unable to perform sedentary work, was not supported by the plaintiff's treatment history.

Lamentably, Dr. Reilly declined to engage in a peer-to-peer review process with the independent medical reviewers and that in turn prevented Aetna from being able to clarify the apparent discrepancy between Dr. Reilly's treatment notes showing an improvement in the plaintiff's condition following surgery and his ultimate conclusion that the plaintiff was completely disabled. In short, though, on the basis of the administrative record, there is no basis to conclude that the defendant abused its discretion when it weighed Dr. Reilly's opinion as it did but nonetheless concluded that the plaintiff's impairments did not prevent him from performing sedentary work.

### 3. Failure to Conduct a Peer-to-Peer Review with Dr. Reilly

The plaintiff argues that the defendant's independent medical reviewers should have made more of an effort to conduct a peer-to-peer interview of Dr. Reilly. However, the record shows that the defendant made multiple attempts to contact Dr. Reilly, both by phone and by fax.

Dr. Reilly apparently only conducted peer-to-peer reviews in writing and therefore refused to speak with any of the independent medical reviewers by phone.  But for whatever reason, Dr. Reilly also failed to respond to fax requests that he comment in writing on the independent medical reviewers' reports.  Instead, he submitted several short letters that did not respond to the points raised in the examiners' reports and primarily repeated his conclusion that the plaintiff was disabled.  (*See, e.g.,* A.R. 450, 737, 740, 762).  Again, it is lamentable that these interviews did not take place but it was not for the defendant's lack of effort.

### 4.  *Failure to Conduct Physical Exam*

Finally, the plaintiff argues that the defendant should have commissioned an actual physical exam rather than rely on a paper review of his medical records.  As the defendant notes, there is no rule requiring a plan administrator to conduct its own medical examination of an applicant, even where the benefit plan gives the administrator the right to conduct one.  *Orndorf*, 404 F.3d at 518.  Instead, the plan administrator may exercise its judgment as to when an additional medical exam is warranted.  *See Tebo v. Sedgwick Claims Mgmt. Servs.*, 848 F. Supp. 2d 39, 61 n. 12 (D. Mass. 2012).  In this case, the defendant contends that the plaintiff's medical records were sufficient to allow its independent medical reviewers to render an opinion on the plaintiff's condition.  The reasonableness of this contention is underscored by the fact that three separate reviewing physicians felt comfortable rendering an opinion on the plaintiff's disability status on the basis of the plaintiff's medical records.  At oral argument, the plaintiff was invited to explain why he believed an additional exam was necessary.  The plaintiff did not identify any gaps in his medical records that would have made it unreasonable for the defendant to reach its conclusion without an additional exam.  Instead, he argued that another exam would have corroborated Dr. Reilly's opinion.  While an additional medical exam might have been helpful, it

11

is wholly speculative to contend it would have complemented Dr. Reilly's opinion.  In any event, there is no basis to find that Aetna abused its discretion when it failed to commission one.

### III.   CONCLUSION

For the foregoing reasons, the Court recommends that the defendant's motion for summary judgment be granted and that judgment be entered in favor of the defendant.  The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  August 10, 2016